UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Nancy C. Hardwick, | ) | C/A No. 4:15-2222-MGL-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Bank of America, N.A., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff, Nancy C. Hardwick ("Plaintiff" or "Hardwick"), proceeding pro se, filed this action against Bank of America, N.A. ("Defendant" or "BANA") in the Horry County Court of Common Pleas on May 1, 2015. Defendant removed the matter to this court based on diversity of citizenship and filed an answer to the Complaint on June 2, 2015. ECF Nos. 1, 1-1, and 4. After discovery, Defendant filed a Motion for Summary Judgment, ECF No. 33, which is before the undersigned for a Report and Recommendation ("Report").[1] After considering the Motion; Plaintiff's response, ECF No. 37; and Defendant's Reply, ECF No. 39, the undersigned issues this Report recommending Defendant's Motion for Summary Judgment, ECF No. 33, be *denied*.

I.      Background facts and procedural history

Defendant seeks summary judgment as to Plaintiff's Complaint, claiming that, even construing all facts in the light most favorable to Plaintiff, Defendant is entitled to have this matter dismissed based on legal grounds. Accordingly, the court provides this factual and procedural background in which the facts are considered in the light most favorable to Plaintiff.

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Local Civil Rule 73.02(B)(2)(e), D.S.C, which provides for all pretrial proceedings involving litigation by individuals proceeding pro se be referred to a United States Magistrate Judge. Because the pending motion is dispositive, the undersigned enters this Report for the district judge's consideration.

A.  The instant action

In her Complaint Plaintiff takes issue with Defendant's "administration of its Home Affordable Modification Program ("HAMP")," claiming "Defendant's actions in dealing with the Plaintiff's mortgage loan were fraudulent and negligent at a minimum." Compl., ECF No. 1-1 at 7. Plaintiff's claims concerning Defendant's actions relate to a 2007 promissory note (the "Note") Plaintiff executed in favor of BANA for the principal amount of $160,000. The note was secured by a mortgage (the "Mortgage") on Plaintiff's real property located at 34 Pine Valley Lane, Surfside Beach, S.C. (the "Pine Valley Property"). The note and mortgage were both executed on February 28, 2007. *See id.*

Plaintiff's causes of action against BANA, briefly summarized, follow:

• breach of contract: Plaintiff alleges she and BANA had entered into negotiations to modify the Note under HAMP, BANA failed in its obligations, and did not permit Plaintiff to exercise certain rights under the contract;

• unfair business practices and unfair and deceptive acts: Plaintiff alleges BANA's practices in handling her financial affairs and misleading her throughout the modification process were unfair and deceptive; a portion of this cause of action alleges a foreclosure action has an effect on the public interest and notes the South Carolina Supreme Court issued administrative orders in 2009 and 2011 requiring "financial institutions prove their efforts to mitigate foreclosure proceedings," and that BANA "flagrantly violated that order";

• negligence: Plaintiff alleges BANA was "negligent in its fraudulent handling of the Mortgage Modification process[,]" and BANA's actions caused Plaintiff "undue stress and emotional suffering and deprived the Plaintiff of the peaceful enjoyment of home ownership.";

• breach of fiduciary duty: Plaintiff alleges that, as a BANA employee on medical leave, she put her "full trust and faith" in BANA and its Associate Banking Division, relying on BANA's

advice that the HAMP modification was the "best option" for Plaintiff to pursue, although BANA
could have offered other alternatives;

- <u>breach of the covenant of good faith and fair dealing</u>: Plaintiff avers BANA's "delay tactics,
  followed by an outcome of denial" of a modification impaired her "home ownership enjoyment"
  rights, breaching the covenant of good faith and fair dealing implicit in any contract; and

- <u>fraud</u>: Plaintiff claims BANA falsely misrepresented its intentions concerning potential
  modification of the terms of her Note and Mortgage and that the denial of her modification was part
  of a "larger scheme to deny modifications."

*See* Compl., ECF No. 1-1. Both Plaintiff and BANA note that these causes of action are the same
ones she attempted to pursue in earlier litigation in this court.[2] *See* Compl. 1-2; Def.'s Mem. 6
(noting Plaintiff now raises the same causes of action raised in prior federal action).

In her prayer for relief, Plaintiff seeks a "permanent loan modification," as to the Pine
Valley Property loan, including modification of interest, reduction of principal, waiver of all fees,
and removal of her account from credit bureaus. Compl., ECF No. 1-1 at 12. Plaintiff also seeks a
$120,000 judgment against Defendant for "damages for severe and unrelenting mental and
emotional anguish and suffering and embarrassment and humiliation," as well as punitive damages
and costs. *Id.*

 B. Other relevant litigation

  1. The 2010 state-court foreclosure action[3]

The following description of the "2010 Foreclosure Action" is taken from publicly available
information and documents,[4] or undisputed information provided by the parties to this case. The

---

[2] The prior federal litigation is discussed below.
[3] The court takes judicial notice of public court records. *See Philips v. Pitt Cnty. Mem'l Hosp.,* 572
F.3d 176, 180 (4th Cir. 2009) (holding that a court may "properly take judicial notice of matters of
public record"); *Gasner v. Cnty. of Dinwiddie,* 162 F.R.D. 280, 282 (E.D. Va. 1995) (permitting
district court to take judicial notice of public documents).

undersigned notes that Plaintiff takes issue with the foreclosure judgment and that her appeal of that judgment is pending with the South Carolina Court of Appeals. At this juncture of this federal-court litigation, however, the court must consider Defendant's legal challenges brought in its pending Motion for Summary Judgment, which concern in part this court's authority to make decisions as to evidence or arguments concerning the state-court litigation. Accordingly, it is not necessary to fully explore Plaintiff's factual challenges and defenses to the 2010 Foreclosure Action.

Hardwick defaulted on her loan obligations as to the Pine Valley Property note and mortgage. Pl.'s Resps. Def.'s 1st Req. for Admission ¶¶ 1, 5, ECF No. 33-2. On December 21, 2010, BANA filed a foreclosure complaint to foreclose on the Pine Valley Property. 2010-CP-26-11806. A copy of the Foreclosure Complaint is available at ECF No. 33-3. In addition to Hardwick the Foreclosure Complaint includes two additional defendants: BANA (pursuant to a junior $30,000 mortgage) and Caropines Community Association (as to "any homeowners liens or assessments"). Foreclosure Compl. 2.

On September 22, 2015, Horry County Master in Equity Cynthia Graham Howe entered a Master in Equity's Order and Judgment of Foreclosure and Sale. A copy of the Order and Judgment of Foreclosure and Sale ("Foreclosure Order") is available at ECF No. 33-6. The Foreclosure Sale Order lists the "Ventures Trust 2013-I-H-R by MCM Capital Partners, LLC, its trustee" [hereinafter "Ventures Trust"] as the foreclosure plaintiff. The available docket information indicates a motion to substitute the foreclosure plaintiff was filed and granted on May 14, 2015.[5] The Horry County docket information now lists "Ventures Trust" as the plaintiff for all matters, including the suit's filing in December 2010; however, the undersigned takes judicial notice from copies of documents

---

[4]*See* http://publicindex.sccourts.org/Horry/PublicIndex/CaseDetails.aspx?County=26&CourtAgency=26003&Casenum=2010CP2611806&CaseType=V (last visited June 6, 2016).

[5] *See* http://publicindex.sccourts.org/Horry/PublicIndex/CaseDetails.aspx?County=26&CourtAgency=26003&Casenum=2010CP2611806&CaseType=V. (last visited June 6, 2016).

provided in this action and in the 2012 federal action that BANA initiated the suit and remained the foreclosure plaintiff until the motion to substitute was granted on May 14, 2015. *E.g.,* 2010 Foreclosure Compl., ECF No. 33-3 (Bank of America, N.A. listed as plaintiff); Foreclosure Order, noting Bank of America, N.A. initially held the mortgage and plaintiff was substituted thereafter). The Foreclosure Sale Order indicates the mortgage on Hardwick's Pine Valley Property was "assigned to Ventures Trust 2013-I-H-R by MCM Capital Partners, LLC by assignment recorded on February 13, 2015 in Book 5655 at Page 1945." Foreclosure Sale Order 2, available at ECF No. 33-6. Available online public real estate records from Horry County indicate the February 13, 2015 assignment was from BANA to Ventures Trust.[6] The record contains no additional information regarding the terms of the BANA-to-Ventures-Trust assignment.

The Foreclosure Sale Order found all of the foreclosure defendants—Hardwick, BANA in capacity as junior-mortgage holder, and Caropines Community Association—to be in default. In the Foreclosure Order, the Master in Equity indicated she held a hearing at which Hardwick appeared pro se. Foreclosure Order 1. The Foreclosure Sale Order notes that the foreclosure plaintiff at the time of the Order—Ventures Trust 2013-I-H-R by MCM Capital Partners, LLC, its trustee—had been assigned the Note and Mortgage after the Foreclosure Action was commenced, but that "no party raised the Plaintiff's standing to sue[,]" and that issue has been waived. *Id.* at 2. The Foreclosure Order removes the junior mortgages of BANA (for the $30,000 mortgage) and Caropines Community Association from the title of the Pine Valley Property. *Id.* at 4.

The Foreclosure Sale Order also notes the foreclosure plaintiff completed the HAMP "modification process specified by the Guidelines or a Supplemental Directive," but did not result in a modification "because the borrower failed to respond to the HMP Solicitation." *Id.* Further, that Order indicated the foreclosure plaintiff complied with Administrative Order 2011-05-02-1 issued

---

[6] *See* http://www.horrycounty.org/ocw/showdetails.aspx?id=7349730&rn=0&pi=0&ref=search (last visited June 6, 2016).

by the South Carolina Supreme Court. *Id.* The Foreclosure Order entered a judgment of foreclosure of the Mortgage and ordered the Pine Valley Property be sold "at public auction[,]" and included details regarding the manner in which the sale would be conducted. *Id.* at 4-7.

Hardwick filed a Motion to Reconsider the Foreclosure Order on October 6, 2015, *see* ECF No. 33-7 at 7-8, at which time Hardwick raised several defenses to the Foreclosure Order. In the state-court motion, Hardwick briefly set out the following arguments:

- Hardwick argued that the foreclosure plaintiff (Ventures Trust) lacked standing to sue;

- Hardwick sought judgment in her favor pursuant to "Rule 56 of SCRCP," noting Rule 12(b)(8) and that another action was pending between the same parties,[7] arguing Ventures Trust was aware of the other pending litigation and was subject to the claims;

- Hardwick argues the Supreme Court of South Carolina's Administrative Order 2011-05-02-01 was violated and there had "never been any such 'foreclosure intervention' in this action[,]" arguing neither Ventures Trust nor BANA complied with the Administrative Order; Hardwick also submits that Ventures Trust purchased the Note from BANA at a discount and was aware of the pending litigation and the failure to comply with the Administrative Order; and

- Hardwick submits that, "[a]s clearly stated in the Master in Equity hearing," she disputes the amount due and owing and reiterates her request for an accounting.

ECF No. 33-7.

The Horry County Master in Equity denied the Motion to Reconsider on October 22, 2015. *See* ECF No. 33-7 at 10-11. In that order, the court noted Hardwick was in default because she had not answered the foreclosure complaint. ECF No. 33-7 at 10. "Therefore," the Master in Equity

---

[7] Presumably the instant federal action is the other action to which Hardwick refers, although she does provide any detail in the Motion to Reconsider.

stated, "any defense [Hardwick] may have raised to the allegations, including those she now raises in her motion for reconsideration [listing the arguments noted above[8]] have been waived." *Id.* Further, the Master in Equity stated the question of whether the lenders complied with the Administrative Order had been "reviewed at the hearing on September 10, 2015, and properly disposed of[,]" noting the foreclosure plaintiff sent a "Request for Foreclosure Intervention" to Hardwick on January 9, 2013, "based on a Certificate of Service on file with the Court." *Id.*

Hardwick then appealed the matter to the South Carolina Court of Appeals and sought an emergency Motion to Stay Foreclosure on November 24, 2015. The Court of Appeals denied that emergency Motion on November 25, 2015.[9] A copy of the Motion to Stay Foreclosure and Order denying that motion are available at ECF Nos. 33-7 and 33-8. The appeal to the Court of Appeals remains pending, but, according to the Court of Appeals' Case Management System, the matter is held in abeyance based on a March 30, 2016 Order.[10] A March 1, 2016 entry on the Horry County Court of Common Pleas docket indicates that matter is stayed due to a bankruptcy filing.[11]

2. Plaintiff's 2012 federal litigation

As Plaintiff notes in the instant Complaint, the causes of action now before the court "were originally filed in a Complaint filed with the Court of Common Pleas, Horry County, SC, on April 12, 2012, as File No. 2012-CP-26-2971." Compl., ECF No. 1-1 at 6-7. BANA, also defendant in the 2012 litigation, removed that matter to this court. *Hardwick v. Bank of America, N.A.*, C/A No. 4:12-1286-MGL-KDW.

The 2012 complaint concerned actions surrounding two mortgage loan transactions Plaintiff had entered into with BANA: one mortgage/loan concerned the Pine Valley Property; the other

---

[8] The Master in Equity characterized the third defense as including a claim that the foreclosure plaintiff had violated the Fair Debt Collection Practices Act. ECF No. 33-7 at 10.
[9] *See* http://ctrack.sccourts.org/public/caseView.do?csIID=60876 (last visited June 6, 2016).
[10] *See* http://ctrack.sccourts.org/public/caseView.do?csIID=60876 (last visited June 6, 2016).
[11]http://publicindex.sccourts.org/Horry/PublicIndex/CaseDetails.aspx?County=26&CourtAgency=2 6003&Casenum=2010CP2611806&CaseType=V (last visited June 6, 2016).

concerned property located on Magnolia Drive in Surfside Beach, SC. The 2012 complaint focused on Defendant's actions in its dealings with Plaintiff concerning requested modifications of the mortgages and Defendant's foreclosure actions as to the referenced properties. *See* 2012 Compl. 1-10, ECF No. 1-1 in 4:12-1286. The 2012 complaint included the following causes of action: Breach of Contract; Breach of Covenant of Fair Dealing and Good Faith; Breach of Fiduciary Duty; Negligence; Unfair Business Practices; Unfair and Deceptive Acts; and Fraud. *Id.*

After a hearing and consideration of the parties' memoranda, the undersigned recommended that matter be dismissed. *See* R&R in 2012 Action, ECF No. 62 in 4:12-1286. After a recommended finding that Plaintiff's claims passed muster under the pleading rules of Rule 8, the undersigned noted the 2010 foreclosure action as to the Pine Valley Property, 2010-CP-26-11806, had been restored to the state court's active docket and remained pending. The undersigned recommended the court abstain from further proceedings based on *Younger v. Harris*, 401 U.S. 37 (1971). *See* R&R in 2012 Action 14-15. Plaintiff did not object to that portion of the undersigned's January 29, 2013 Report and Recommendation, and the U.S. District Judge assigned to the 2012 matter adopted that recommendation and dismissed the 2012 litigation on March 5, 2013. *See id.* at Order in 2012 Action, ECF No. 70 in 4:12-1286.

### 3. Plaintiff's Chapter 13 bankruptcy proceeding

On December 7, 2015, Plaintiff filed a petition for bankruptcy under Title 13 of the Bankruptcy Code. *See* Pet., 15-06494-jw (Bankr. S.C.). The Bankruptcy Court has ordered that the current holder of the mortgage on the Pine Valley Property (BSI Financial Services) to engage in the court's "Loss Mitigation/Mortgage Modification process in good faith[.]" Order Requiring Loss Mitigation/Mortgage Modification, filed March 25, 2016, in Bankruptcy Court (Doc. 49 in Bankruptcy Matter). In response to the court's inquiry, both parties agree that Plaintiff's prosecution of this matter is not impacted her Chapter 13 bankruptcy. *See* ECF Nos. 43, 48, 51.

4.    The instant action

On May 1, 2015, Plaintiff filed the instant action in the Horry County Court of Common Pleas, and BANA removed it on June 2, 2015. Of note, in Plaintiff's May 1, 2013 Complaint, she noted she had "recently received notification that the Defendant [BANA] has assigned the Mortgage referred to in this complaint, to "Ventures Trust 2013-I-H-R by MCM Capital Partners, LLC, its Trustee." Compl. 12.[12] After discovery was completed, BANA filed the Motion for Summary Judgment now under consideration.

II.    Standard of review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the nonmoving party is to be believed and all justifiable inferences must be drawn in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts

---

[12] Plaintiff also "respectfully requests the right to add [Ventures Trust] as an additional Defendant in this action, if through discovery it is learned there exists a collusion between the Defendant and the assignee in any of the above causes of action in this complaint." Compl. 12.

that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge. *See Latif v. The Cmty. Coll. of Baltimore*, 354 F. App'x 828, 830 (4th Cir. 2009) (affirming district court's grant of summary judgment, noting plaintiff's affidavit, which offered conclusions not based on his own knowledge, did not create genuine issues of material fact). In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the nonmoving party's favor. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002) (Title VII). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

III.    Analysis

In its Motion for Summary Judgment, Defendant asserts it is entitled to judgment as a matter of law based on three separate legal grounds: statute of limitations; res judicata; and abstention.[13] The court considers these arguments in turn.

---

[13] Defendant argues abstention pursuant to the abstention doctrine known as the "*Rooker/Feldman*" Doctrine, so-named based on the two United States Supreme Court cases of *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

A.  Statute of limitations

BANA first argues Plaintiff's 2015 action is time-barred based on South Carolina's three-year statute of limitations applicable to both contract and tort claims.[14] Def.'s Mem. 7-10. Defendant argues that, because each of Plaintiff's claims all relate to Defendant's "alleged wrongful conduct" as to its "alleged mishandling and denial of her loan modification application in 2010, the limitations period began at least by December 21, 2010,[15] when BANA initiated the 2010 Foreclosure Action. *Id.* at 10.

In her pro se response, Plaintiff takes issue with the statute-of-limitations defense. Pl.'s Resp. 1-2, ECF No. 37-1. Plaintiff notes her 2012 federal action had been timely filed and notes this court's determination it should abstain from considering that action on the merits given the pending foreclosure action. Plaintiff continues that, subsequent to this court's ruling of abstention,

> Plaintiff awaited Defendant's action to seek a Foreclosure Judgment and the opportunity for a hearing. The Defendant, aware of the claims asserted by the Plaintiff, chose not to pursue any action [in the pending 2010 Foreclosure --], but rather assigned and/or sold the subject Mortgage in an effort to impede the Plaintiff's right to seek justice.

Pl.'s Mem. 1. Plaintiff submits that negotiations as to the mortgage modification were "ongoing for years" and the Complaint now being considered is "simply an ongoing and refile of the original and first Complaint[,]" making the timeliness argument ineffective. *Id.* at 2.

In Reply, BANA again argues her claims were not timely filed and that Plaintiff "had the opportunity to bring these claims in the state court foreclosure action, but chose not to do so." Reply

---

[14] It is undisputed that a three-year limitations period applies to all of Plaintiff's claims. S.C. Code Ann. § 15-3-530, § 39-5-150.

[15] In its Reply, Defendant submits the statute began running as of November 19, 2010, based on a "HomeSaver – Workout Notes" form of that date that Plaintiff supplied in responding to the pending motion. Reply 1, ECF No. 39 (referring to document found at ECF No. 37-1). The undersigned notes, however, that page one of this document was printed on April 24, 2012, and the record contains no details regarding when Plaintiff may have received such information.

2. BANA does not address Plaintiff's argument that BANA chose not to pursue the Foreclosure Action but, instead, sold or assigned the Mortgage to a third party.

Having considered the arguments of both parties, including the case law cited by BANA, and having conducted independent research, the undersigned cannot recommend that Plaintiff be time-barred given the events of this case. Rather, the undersigned construes Plaintiff's argument as one seeking equitable relief from the statute-of-limitations' bar and recommends a finding that Plaintiff should receive such equitable relief.

Simply stated, when this court dismissed the 2012 action based on *Younger v. Harris* abstention, the 2010 Foreclosure Action had just been returned to the active docket, and, because it had been brought by BANA, it was expected that Hardwick would have the opportunity to have her claims considered in the Foreclosure Action. *See* R&R and Order in 4:12-1286-MGL. Had that not been the case, this court may have ruled differently or perhaps issued a stay.

The court is "obliged to construe liberally the contentions being pursued by pro se parties." *Sinclair v. Mobile 360, Inc.,* 417 F. App'x 235, 243 (4th Cir. 2011) (citing *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir. 1978)) (finding it appropriate to liberally construe pro se parties' submissions at the summary judgment stage). Accordingly, the undersigned construes Plaintiff's argument as one seeking equitable relief from the three-year statutes of limitations applicable to each of her state-law based causes of action. Because South Carolina's statutes of limitations apply, the state's tolling rules also apply. *See Wade v. Danek Med., Inc.,* 182 F.3d 281, 289 (4th Cir. 1999) (finding that "in any case in which a state statute of limitations applies—whether because it is 'borrowed' in a federal question action or because it applies under *Erie* [*R.R. Co. v. Thompkins*, 304 U.S. 64 (1938)] in a diversity action—the state's accompanying rule regarding equitable tolling should also apply.").

In addition to statutory tolling provisions not relevant here, South Carolina courts recognize two equity-based theories that may be used to defeat an otherwise-proper statute-of-limitations defense: equitable tolling and equitable estoppel. *See Magnolia N. Prop. Owners' Ass'n, Inc. v. Heritage Cmtys., Inc.*, 725 S.E.2d 112, 124-26 (Ct. App. 2012). The judicially created doctrine of equitable tolling "stems from the judiciary's inherent power to formulate rules of procedure where justice demands it [and may be invoked to] "suspend or extend the statutory period to ensure fundamental practicality and fairness." *Hooper v. Ebenezer Sr. Servs. & Rehab. Ctr.*, 687 S.E.2d 29, 32-33 (S.C. 2009) (internal citation omitted). The party seeking to toll the limitations period has the burden of establishing the tolling should take place, and courts should use the doctrine "sparingly and only when the interests of justice compel its use." *Id.* Equitable estoppel calls on the court's equitable powers to estop a defendant from prevailing on a statute-of-limitations defense when to do so would be inequitable based on the course of conduct between the parties or by the deceit or misrepresentation of a defendant. *See Magnolia*, 725 S.E.2d at 125-26.

Here, Plaintiff's timely 2012 action was dismissed based on the court's finding, *inter alia*, that Plaintiff would have the opportunity to pursue her claims in the 2010 Foreclosure Action. Accordingly, the undersigned recommends a finding that the statute be equitably tolled pursuant to the "judiciary's inherent power."

This partial timeline of events is instructive:

- December 20, 2010: BANA initiated the 2010 Foreclosure Action.

- April 12, 2012: Plaintiff filed her 2012 suit against BANA.

- March 5, 2013: This court dismissed the 2012 action; claims as to Pine Valley Property dismissed based on *Younger v. Harris* abstention.

- April 3, 2014: BANA's motion to restore the 2010 Foreclosure to the docket was granted.

http://publicindex.sccourts.org/Horry/PublicIndex/CaseDetails.aspx?County=26&CourtAgency=26003&Casenum=2010CP2611806&CaseType=V.[16]

- February 13, 2015:    BANA assigned Note and Mortgage on Pine Valley Property to Ventures Trust.

- May 1, 2015:  Plaintiff filed the instant action, noting she had recently been notified that BANA had assigned the mortgage and note to Ventures Trust.

- May 14, 2015: Ventures Trust substituted for BANA as foreclosure plaintiff in the 2010 Foreclosure Action.
  http://publicindex.sccourts.org/Horry/PublicIndex/CaseDetails.aspx?County=26&CourtAgency=26003&Casenum=2010CP2611806&CaseType=V.

- September 21, 2015:  Foreclosure Order entered in the 2010 Foreclosure Action.

As the South Carolina Supreme Court has noted, courts may use equitable powers to "ensure fundamental practicality and fairness," and:

> The equitable power of a court is not bound by cast-iron rules but exists to do fairness and is flexible and adaptable to particular exigencies so that relief will be granted when, in view of all the circumstances, to deny it would permit one party to suffer a gross wrong at the hands of the other. Equitable tolling may be applied where it is justified under all the circumstances.

*Hooper*, 687 S.E.2d at 116-17 (citations and quotation marks omitted). The South Carolina Court of Appeals noted in *Magnolia* that equitable tolling is often applied when a litigant did not timely file suit because of an "extraordinary event beyond his or her control." *Magnolia*, 725 S.E.2d at 125.

For purposes of analysis, the undersigned accepts for argument's sake BANA's position that Plaintiff was on notice of potential claims as of the time BANA initiated the 2010 Foreclosure Action, December 21, 2010. (The court notes, however, that there is no evidence of the date on which Plaintiff actually became aware of the Foreclosure Action, and the date of actual notice more likely was the service date.) In any event, Plaintiff *did* file the 2012 federal action within the

---

[16] As noted above, the state-court records in the Foreclosure Action now list Ventures Trust as the foreclosure plaintiff for all events, including those pre-May 14, 2015. However, until the substitution of Ventures Trust as plaintiff on May 14, 2015, actions in the Foreclosure Action were those of then-foreclosure plaintiff BANA.

applicable three-year limitations period. Using December 21, 2010 as the date the limitations "clock" started, Plaintiff's April 12, 2012 complaint was filed on or about the 478th day of the 1095-day (three-year) limitations period, which would then leave 613 days remaining on her limitations period. This court dismissed the case on March 5, 2013, finding Plaintiff should be able to pursue the same claims in the still-pending 2010 Foreclosure Action.

The undersigned is of the opinion that the statute of limitations should be tolled for the approximately 318 days the timely-filed 2012 action was pending. As the causes of action are the same, *see* Compl. and Def.'s Mem. 6, fairness requires such tolling.

Subsequent to the 2013 dismissal, Plaintiff awaited a hearing on the pending 2010 Foreclosure Action BANA had filed against her. Pl.'s Mem. 1. The undersigned recommends the equitable tolling period continue subsequent to the dismissal of the 2012 action. At that time, Plaintiff awaited BANA's action in prosecuting the Foreclosure Action, which self-represented Plaintiff understood would then result in a hearing in which she would be able to raise her claims against BANA. Equity suggests this tolling period should continue until the time Plaintiff became aware that BANA had assigned the Note and Mortgage at the heart of the 2010 Foreclosure Action to a third party. Although the record does not provide a specific date on which Plaintiff became aware of BANA's assignment of the Pine Valley Property Note and Mortgage, public records indicate that assignment took place on February 13, 2015. The period from the dismissal of the 2012 Action and the assignment was one of approximately 679 days, making the total recommended equitable-tolling period one of approximately 1047 days. If the limitations period began running again on the next non-holiday weekday following February 13, 2015 (February 17, 2015), Plaintiff's three-year limitations period ends on or about October 22, 2016, which is 613 days after February 17, 2015.

Further bolstering the case for equitable tolling, Plaintiff acted quickly when she became aware that BANA had assigned the Note and Mortgage, filing the instant action on May 1, 2015, which was fewer than three months after the assignment had been made part of the public record.

In making this recommendation, the undersigned notes BANA's brief argument that Plaintiff "failed to raise [her] claims with respect to the Pine Valley Property until the Current [2015] Complaint was filed by Plaintiff on May 1, 2015, despite her opportunity to do so in the foreclosure action." Def.'s Mem. 10. This argument is factually incorrect because Plaintiff first raised her Pine Valley Property-related claims in the 2012 action. Based on the court's abstention, those claims were dismissed to be pursued in the pending Foreclosure Action brought by BANA. Plaintiff was (and is) proceeding pro se in the federal actions and the Foreclosure Action. Plaintiff submits that she "awaited Defendant's [BANA's] action to seek a Foreclosure Judgment and the opportunity for a hearing." Pl.'s Mem. 1. Under the circumstances of this case, the undersigned is of the opinion that Plaintiff diligently and properly pursued her claims against Defendant. To find otherwise would have the effect of unjustly preventing Plaintiff from having a forum in which to pursue her claims against BANA. *See Hooper*, 687 S.E.2d at 32. She should not be time-barred here.

Based on the recommended equitable tolling, Plaintiff's Complaint in the instant action should be considered timely filed, and BANA's Motion for Summary Judgment should be denied as to this issue. In making this recommendation, the undersigned is mindful that equitable tolling should be used sparingly; this recommendation is limited to the facts before the court. Based on these unique circumstances, "the interests of justice compel its use." *Hooper*, 687 S.E.2d at 33. Here, Plaintiff has been steadfast in her attempt to raise the claims against BANA that are contained in the instant suit. Her initial filing was timely, but the court dismissed it on the premise she could pursue those claims in the Foreclosure Action BANA had brought. Plaintiff—also proceeding pro

se in the Foreclosure Action—reasonably awaited a hearing in that action. Shortly after learning that things had changed, and she no longer was involved in any litigation against BANA that concerned the Pine Valley Property, she filed the instant action. This sequence of events was not of Plaintiff's doing, and she promptly took action to refile her claims upon learning BANA was no longer her adversary in the Foreclosure Action.

Further, the undersigned is mindful that statutes of limitations exist to protect defendants as to potential claims being brought against them. *See Kelly v. Logan, Jolley & Smith, L.L.P.*, 682 S.E.2d 1, 4 (S.C. Ct. App. 2009) "[One] purpose of a statute of limitations is to protect potential defendants from protracted fear of litigation."). The South Carolina Court of Appeals further noted that a *"*purpose of a statute of limitations is to relieve the courts of the burden of trying stale claims when a plaintiff has slept on his or her rights." *Id.* Neither of those concerns is present here. BANA has known of Plaintiff's desire to pursue the claims brought herein at least since the filing of her 2012 action in this court. Aware that this court found those claims survived BANA's Rule 8 challenge and the court's determination that the claims should be pursued in the pending Foreclosure Action, BANA waited over a year to restore the 2010 Foreclosure Action to the docket, and nearly a year later BANA entered into an agreement with a third party that had the effect of removing it from the Foreclosure Action. Meanwhile, pro se litigant Hardwick awaited a hearing on the Foreclosure Action so that she could raise the claims from her 2012 federal action. Upon learning BANA had assigned the Note and Mortgage and would not continue as a party to the Foreclosure Action, Plaintiff acted quickly to file the instant litigation. All of these circumstances combine to make it appropriate to deny BANA's Motion for Summary Judgment as to its statute of limitations defense.

Alternatively, the undersigned is of the opinion equitable estoppel could operate to defeat BANA's limitations argument. Plaintiff asserts that BANA "chose not to pursue any action" in the

Foreclosure Matter and assigned or sold the mortgage on her property "in an effort to impede the Plaintiff's right to seek justice." Pl.'s Mem. 1. As the *Magnolia* court noted, equitable estoppel is often applied when a defendant deceives a would-be plaintiff to keep him or her from filing a suit, although deceit is not essential. 725 S.E.2d at 125. Equitable estoppel may also apply when a party "reasonably relied on the words and conduct of the person to be estopped in allowing the limitations period to expire." *Id.*

Here, BANA's 2010 Foreclosure Action remained pending at the time the 2012 federal action ended. Part of the federal order ending the 2012 action was based on Plaintiff's raising her claims in the still-pending 2010 Foreclosure Action—an action in which BANA was also a party. Plaintiff, a pro se litigant, awaited a hearing in the action to argue her claims against BANA. BANA was aware of Hardwick's claims that she would seek to raise in the Foreclosure Matter based on this court's prior ruling. Plaintiff awaited a hearing in that action, Pl.'s Mem. 1, but learned sometime after February 13, 2015, that BANA would no longer be a party to the Foreclosure Action. Fewer than three months later, Plaintiff filed the instant suit.

The undersigned remains sensitive to the interest of the state courts in real-estate-related matters. In that regard, the undersigned remains of the opinion that, *in most scenarios*, such related claims should be litigated in appropriate real-estate-related proceedings such as foreclosure actions. *See, e.g., Shaffer v. Hetner*, 433 U.S. 186, 207-08 (1977) (recognizing states have strong interests in providing for resolution concerning the possession of a piece of property). Here, though, it seems that the "perfect storm" of events thwarted Hardwick from consideration of her initially timely claims against BANA. Nothing in this recommendation is intended to be taken as the undersigned's opinion regarding Plaintiff's success in any further proceedings herein.

B.  Res judicata

BANA also argues it is entitled to judgment as a matter of law based on the preclusion doctrine of res judicata, arguing the Master in Equity's Foreclosure Order in the 2010 Foreclosure Action bars litigating Plaintiff's claims in this case. Def.'s Mem. 11-13. Defendant appropriately notes that this court looks to South Carolina law when considering the effect of a judgment of a South Carolina court. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

Res judicata, also known as claim preclusion, bars subsequent actions by the same parties when claims arise out of the same transaction or occurrence that was the subject of a prior action between these parties. *See Plum Creek Dev. Co. v. City of Conway*, 512 S.E.2d 106 (S.C. 1999); *Rogers v. Kunja Knitting Mills, U.S.A.*, 520 S.E.2d 815, 817 (S.C. Ct. App. 1999). As set out by the Supreme Court of South Carolina, res judicata requires three elements be met: "1) a final, valid judgment on the merits; 2) identity of parties; and 3) the second action must involve matters properly included in the first suit. *Stone v. Roadway Express, Employer*, 627 S.E.2d 695, 697 (S.C. 2006) (internal citation omitted).

As explained by the court in *Plum Creek Development Co.*:

Res judicata bars subsequent actions by the same parties when the claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties. *Sub-Zero Freezer Co. v. R.J. Clarkson Co.*, 308 S.C. 188, 417 S.E.2d 569 (1992). Under the doctrine of res judicata, "[a] litigant is barred from raising any issues which were adjudicated in the former suit and any issues which might have been raised in the former suit." *Hilton Head Center of South Carolina, Inc. v. Public Service Comm'n of South Carolina*, 294 S.C. 9, 11, 362 S.E.2d 176, 177 (1987).

512 S.E.2d at 109.

Defendant claims each of these elements has been satisfied. Plaintiff does not dispute that the "identity of subject matter" element has been satisfied, as both concern the Pine Valley Property. Plaintiff argues, though, that BANA has not satisfied the "identity of the parties" element or the "opportunity to litigate" element. Pl.'s Mem. 2. The undersigned agrees with Plaintiff.

19

As discussed above, while the 2010 Foreclosure Action was initially brought by then-mortgagee BANA against Plaintiff, before the substantive hearing in that action, BANA was removed as Plaintiff and replaced by a third party. BANA submits the Foreclosure Action was "between the exact same parties as the instant action, as BANA was the originating lender under the Note and Mortgage and [BANA] filed the Foreclosure Complaint." Def.'s Mem. 12. Defendant provides no case law or other information to support that argument. While true the Foreclosure Action was brought by BANA in 2010, res judicata analysis focuses on the preclusive effect a *judgment* should be afforded. *See Duckett v. Goforth*, 649 S.E.2d 72, 81-82 (S.C. Ct. App. 2007) ("*Res judicata* is the branch of the law that defines the effect a valid judgment may have on subsequent litigation between the same parties and their privies.") (internal quotation marks and citations omitted).

Here, even if the Order of Foreclosure were considered a "final, valid judgment on the merits,"[17] simple review of the identity of the parties to the Order of Foreclosure reveal the parties are not the same as those now before the court, *see* ECF No. 33-6, nor does anything in the record indicate otherwise.[18]

Each of the elements of res judicata must be satisfied for the doctrine to operate. Because BANA has not demonstrated identity of parties, this portion of its Motion should be denied.

---

[17] As neither party has questioned this element of the res judicata analysis, the court need not now determine whether the Order of Foreclosure—which is on appeal and being held in abeyance—could be considered a final judgment on the merits for res judicata purposes.

[18] As noted above, nothing in the record suggests an argument that Venture Trust could be in privity with BANA for res judicata purposes. BANA has not satisfied its burden of demonstrating entitlement to res judicata preclusion. *See Plum Creek Develop.*, 512 S.E. 2d at 109 (noting burden on defendant claiming res judicata).

C.  Abstention

Finally, BANA seeks summary judgment pursuant to the "*Rooker/Feldman*" Doctrine, so-named based on the two United States Supreme Court cases of *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

"[U]nder what has come to be known as the *Rooker-Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (per curiam). As the Court noted in 2005, the *Rooker-Feldman* Doctrine applies to "cases brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Other courts in this District have found the *Rooker-Feldman* Doctrine required dismissal of federal court actions concerning matters in which "state-court losers" challenged state-court judgments rendered before the federal actions were commenced. *See, e.g.*, *Stanfield v. CitiMortgage, Inc.*, C.A. No. 2:09-2711-MBS-RSC, 2010 WL 3257721 (D.S.C. July 16, 2010), adopted in 2010 WL 3257722 (D.S.C. Aug. 16, 2010); *Kotsopoulos v. Mortg. Elec. Registration Sys., Inc.*, No. 4:06-1106-TLW-TER, 2007 WL 905094 (D.S.C. Mar. 22, 2007).

Here, though, there has been no final judgment entered by the state court. An appeal is pending with the South Carolina Court of Appeals, and the appeal has been held in abeyance. *Cf. Gardner v. Litton Loan Servicing LP*, No. CIV.A. 9:12-1766-SB, 2013 WL 6193514, at *3 (D.S.C. Nov. 26, 2013) (declining to apply *Rooker-Feldman* abstention when it appeared state-court foreclosure action was still pending).

Further, even if the Foreclosure Order were considered "final" for purposes of *Rooker/Feldman*, Plaintiff filed this action *before* the Foreclosure Order was entered. Plaintiff filed

this action in state court on May 1, 2015, it was removed to this court on June 2, 2015, and the Foreclosure Order was signed on September 21, 2015.

For these reasons, the undersigned recommends denying BANA's request for dismissal on *Rooker/Feldman* abstention grounds.

IV.    Conclusion

For the foregoing reasons, it is recommended that BANA's Motion for Summary Judgment, ECF No. 33, be *denied*.

IT IS SO RECOMMENDED.

June 8, 2016                                            Kaymani D. West
Florence, South Carolina                               United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**